IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>PATRICK FRIEDEL, )<br>)<br>        Defendant ) | CRIMINAL NO. 1:14CR383<br><br>Sentencing Date:  April 24, 2015<br><br>The Honorable T.S. Ellis, III |

**POSITION OF THE UNITED STATES**
**WITH RESPECT TO SENTENCING**

    The United States of America, through its attorneys, Dana J. Boente, Acting United States Attorney, and Tracy Doherty-McCormick, Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, files this Position of the United States with Respect to Sentencing in the instant case.  The United States has no objections to the guideline calculation in the presentence report (PSR), which reflects a total adjusted offense level of 39 and a guideline range of 262-327 months.  For the reasons stated below, a sentence at the low end of the guideline range and fifteen years of supervised release is appropriate.

**BACKGROUND**

    On November 20, 2014, a federal grand jury returned a two-count indictment, charging Defendant Patrick Friedel ("Defendant") with one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of travel with intent to engage in illicit sexual activity 18 U.S.C. § 2423(b).  (Dkt. #17).  On January 16, 2015, Defendant pleaded guilty to a two count Criminal Information, charging one count of production of child pornography in

violation of 18 U.S.C. § 2251(a) (Count One) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4) (Count Two).  (Dkt. #26; PSR ¶1).

According to the statement of facts agreed upon by the United States and Defendant, between in or about 2012 through 2013, Defendant used a social media site to communicate with Minor A, who he knew was 15 to 16 years old.  (PSR at ¶21-22).  Defendant persuaded, induced, enticed and coerced Minor A to send depictions of her vagina and of her masturbating, including with objects.  Defendant directed Minor A to write "Patrick's sex slave and cum slut" on her legs and groin.  (PSR at ¶23).  On three occasions, Defendant met with Minor A and engaged in sexual intercourse and oral and anal sodomy with her.  Some of this he recorded on video and still-images.  (PSR at ¶24-27).

Between 2013 and 2014, Defendant used online text and photo messaging applications to communicate with Minor B, who he knew was 16 years old.  (PSR at ¶30).  Minor B sent defendant depictions of her vagina and of her masturbating, including with objects.  Defendant knowingly possessed these depictions on his computer.  (PSR at ¶31).  Defendant sent Minor B depictions of his penis and of him masturbating, including with objects, as well as depictions of another minor engaged in sexually explicit conduct.  (PSR at ¶32).  On one occasion, Defendant told Minor B that he wish he "could have raped [her] when [she was] 11 or 13" and would have made a "cock slave out of [her]."  Defendant also told Minor B, "I'm going to make you say over and over again you're 16 and this is illegal as I'm raping your holes."  (PSR at ¶33).

In or about 2012, Defendant used online messaging applications to communicate with Minor C, who he knew was approximately 16 years-old.  (PSR at ¶36-37).  Minor C sent Defendant depictions of her vagina and of her masturbating, including with objects.  Defendant

possessed these images on his computer. Defendant sent Minor C depictions of his penis, told her about sex he was having with another minor in the area, sent her depictions of that other minor engaging in sexually explicit conduct with defendant, and asked Minor C to join them. (PSR at ¶38). Defendant became angry with Minor C if she did not do what he asked. He told Minor C that he would come find her, that she was not important, and that he would post online the images she had sent to him. Defendant also told Minor C that her parents would hate her and leave her and that she would go to jail if she told anyone. (PSR at ¶39).

In or about 2013, Defendant used telephone and online applications to communicate with Minor D, who he knew was approximately 15 years old. (PSR at ¶41). He sent Minor D a picture of his penis in his hand, and Minor D sent Defendant four to five nude pictures of herself. (PSR at ¶42-43). Defendant told Minor D that if she did not send him additional images, he would come to Iowa and meet her family to tell them what she did. (PSR at ¶44).

Between 2012 and 2014, Defendant used online applications to communicate with Minor E, who he knew was 13 through 15 years old. (PSR at ¶47-49). Minor E sent Defendant depictions of her vagina and of her masturbating, including with objects. Defendant possessed these depictions on his computer. (PSR at ¶50). Defendant sent Minor E depictions of him masturbating and a video of another girl "playing with herself" because he wanted Minor E to do the same. (PSR at ¶51-52). Defendant also sent Minor E a video depicting a girl, who appeared to be the same age as Minor E, giving Defendant oral sex. (PSR at ¶52). At times, Minor E would tell Defendant "no" when he asked her to do something; in response, Defendant became angry and called her names. (PSR at ¶53).

## POSITION ON SENTENCING

Pursuant to the Sentencing Guidelines § 3D1.2(d), Counts One and Two are grouped for calculation purposes. Under § 2G2.1 of the Sentencing Guidelines, Defendant's base offense level for Count One is 32. The base offense level is increased by two (2) levels under §2G2.1(b)(1)(B) because the offense involved a minor who attained the age of 12 but who had not attained the age of 16. The offense level is increased by two (2) levels under §2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact. The offense level is increased by four (4) levels under §2G2.1(b)(4) because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. The offense level is increased by two (2) levels under §2G2.1(b)(6)(B) because the offense involved use of a computer to solicit a minor's participation in sexually explicit conduct. The adjusted offense level is 42, less three (3) levels for acceptance of responsibility under §3E1.1(a)(b), resulting in a total offense level of 39.

The statuary penalties for Count One are a mandatory minimum term of fifteen (15) years imprisonment with a maximum term of 30 years imprisonment, a maximum fine of $250,000, a special assessment of $100, forfeiture, restitution, and a supervised release term of five (5) years to life. The statutory penalties for Count Two are a maximum term of 20 years of imprisonment, a fine of $250,000, full restitution, forfeiture, a special assessment, and a mandatory minimum five-year term of supervised release to a maximum supervised release term of life. The defendant is in Criminal History Category I. As a result, the advisory guideline range is 262 to 327 months in custody.

### A. Sentencing Argument

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court instructed that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *Id.* at 264; *see also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence.") 18 U.S.C. §3553(a)(4), (a)(5). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. §991(b)(1)(B)); *see also* 18 U.S.C. §3553(a)(6). The Fourth Circuit has provided the following post-*Booker* guidance:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the guideline range as well as the other specified factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a). The court must impose a sentence that is sufficient but no greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with

needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at (a)(2); *see also, Biheiri,* 356 F.Supp.2d at 594.

"Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson,* 529 U.S. 53, 59 (2000). "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson,* 511 U.S. 39, 50 (1994). The authorized term of supervised release under 18 U.S.C. §3583(k) for the offenses at issue here, namely, five years to life, reflects concern about recidivism and the need for supervision over time. *See* H.R. Rep. No. 107-527 at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as offenders age");[1] H.R. Conf. Rep. No. 108-66 at 49-50 (2003)  In considering the length and conditions of supervised release, the court should consider the nature and circumstances of the offense, the defendant's history and characteristics, adequate deterrence, the defendant's need for training, medical care or treatment, the kinds of sentence and range established in the Sentencing Guidelines, pertinent policy statements, the need to avoid unwarranted sentence disparities, and restitution.  *See* 18 U.S.C. §3583(c) (courts should consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4); (a)(5), (a)(6) and (a)(7));  *see also United States v. Helton,* --- F.3d ----, 2015 WL 1475099 at FN* (4th Cir. 2015).

    i.   *The Seriousness of the Offense*

The nature and circumstances of the offense are serious.  In *New York v. Ferber*, 458 U.S. 747, 758 (1982), the Supreme Court recognized that, in the judgment of state and federal

---

[1] This explanation concerning the background and need for the legislation seems to facially conflict with the studies cited by Defendant concerning the low recidivism rates of sex offenders. *See* Def. Pos. at 26 (Dkt. #40).

legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber,* 458 U.S. at 758 (citations omitted); *see also United States v. Cobler,* 748 F.3d 570, 580 (4th Cir. 2014). The *Ferber* court also observed that the "[pornographic] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759 (citation omitted). Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography … It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

Id at 759 & n. 10 (citations omitted). *See also Osborne v. Ohio,* 495 U.S. 103, 109-10 (1990) (reaffirming *Ferber* in case involving possession of child pornography).

In 2002, the United States Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone different. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002). In *Free Speech Coalition,* the court noted that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Id.* at 249.

Not only did Defendant possess images of child pornography, thereby "fueling public consumption of materials harmful to children," but he "also created depictions of his own sexual

exploitation . . ." *See Cobler,* 748 F.3d at 580. His acts "exploited, injured, and inflicted great harm on a most vulnerable victim." *Id.* Defendant's conduct was intentional and repeated. He used persuasion, coercion, manipulation and fear to exploit minors for his own sexual gratification. This was not a crime that occurred from a momentary lapse of judgment. Even assuming the validity of Defendant's argument that he is an opportunist and not a pedophile, *see* Def. Pos. at 16, his conduct and the harm caused by his conduct justify a significant sentence not only to protect the public but also to afford adequate deterrence and justly punish the offense.

   ii. *The History and Characteristics of the Defendant*

The Court will also need to consider Defendant's history and characteristics in fashioning an appropriate sentence. 18 U.S.C. §3553(a)(1). Defendant suffered from abuse as a child and as a result has received mental health counseling. (PSR at ¶84, ¶91). He has no serious medical conditions. (PSR at ¶88-89). He obtained a Master of Arts and was employed from a young age until his arrest. (PSR at ¶98-102). Defendant readily and fully accepted responsibility for his actions. (Dkt. # 28, 29). He sought counseling and treatment following the search warrant that lead to the relevant charges. (PSR at ¶93). These factors militate in favor of a sentence near or at the low end of the guideline range.

   iii. *The Child Pornography Guidelines for Production Deserve Respectful Consideration under 18 U.S.C. §3553*

Defendant argues that the child pornography guidelines are "not the product of an empirically demonstrated need for consistently tougher sentencing" and "fail[] to differentiate among the culpability of defendants." Def. Pos. at 8-10 (Dkt. #40). These arguments are largely based on an article by Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, Fed. Pub. Def. M.D. & W.D. of

La., (rev. Jan 1, 2009) (Stabenow Article) [2] and the United States Sentencing Commission's *Child Pornography Report* issued on February 27, 2013, available at http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses. [3] *See also, United States v. Helton,* 2015 WL 1475099 at *8 (Gregory, J.) (concurring). Irrespective of the relative merits of this debate, it centers on §2G2.2, which applies to the possession, receipt, and distribution of child pornography. The relevant guideline range in this case, however, is determined by §2G2.1, which applies to the production of child pornography.[4]

---

[2] In regard to the *Stabenow Article,* the United States filed a position paper, responding to similar arguments brought by a defendant in another case before this Court in 2009. *See United States v. Castillo,* 1:09CR-386 (EDVA 2009). (Dkt #29). In that case, as here, defendant argued that the child pornography guidelines were not based on empirical data and therefore should be afforded less deference. For the reasons stated in the government's response in *Castillo*, the Sentencing Guidelines under § 2G2.2 deserve respectful consideration under 18 U.S.C. §3553. *Id.*

[3] The report represents one perspective on these issues and has not been adopted or endorsed by Congress. The United States Department of Justice has agreed with some but not all of the recommendations, and has "joined in the call for a critical review of the existing sentencing guidelines for non-production child pornography crimes." It has submitted, however, that the process should not "undermine the purposes of the 2003 PROTECT Act, which was, in part, a response to the prevalence of downward departures and the general inadequacy of sentences in child pornography cases." *See* A. Gannon, National Coordinator for Child Exploitation Prevention and Interdiction, U.S. Department of Justice, Office of the Deputy Attorney General, *Letter to U.S.S.C*. (March 2013), found at http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf (citing H.R. Rep. No. 108-66, 108th Cong., 2nd Sess. 58-59 (2003)).

[4] Only one chapter (approximately 20 pages) of the Sentencing Commission's 300-page report concerning the child pornography guidelines is dedicated to §2G2.1; the remainder focuses primarily on non-production offenses. *See* U.S. Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012, released Feb. 27, 2013). Further, as that report explains, "[s]entencing in federal production cases has been less controversial than in non-production cases;" "a comprehensive revision of the guideline addressing production offenses, §2G2.1, is not necessary at this time, [although] certain conforming amendments may be appropriate if the corresponding provisions in §2G2.2 were to be amended." *Id.* at 247, xix. The Department of Justice has disagreed with this, however, stating that it "does not believe that revisions to Sections 2G2.2's [Specific Offense Characteristics] require conforming amendments to the corresponding provisions in Section 2G2.1. . ." *See* A. Gannon, National Coordinator for

9

### B. The Fifteen-Year Mandatory Minimum is not Grossly Disproportionate to the Severity of the Offense to Constitute Cruel and Unusual Punishment

Defendant seems to make an Eighth Amendment as-applied challenge to the 15-year mandatory minimum sentence.[5] *See* Def. Pos. at 31-32 (Dkt. #40) ("In the circumstances of this case, imposition of the 15 year mandatory minimum sentence of §2251(a) would result in punishment that is grossly disproportionate to the severity of the underlying crimes and, therefore, would constitute "cruel and unusual punishment" that violates the Eighth Amendment").   His challenge should fail because the circumstances here fail to present the "rare case" that would lead to an inference of gross disproportionality based on a threshold comparison of the gravity of the offense and the severity of the sentence.  *See e.g., United States v. Cobler,* 748 F.3d 570, 579 (4th Cir. 2014) (rejecting an Eighth Amendment challenge to a sentence of 120 years for producing, transporting, and possessing child pornography); *United States v. Reingold,* 731 F.3d 204, 216-17 (2nd Cir. 2013) (rejecting an Eighth Amendment proportionality challenge to a five-year mandatory minimum sentence for distribution of child pornography); *United States v. Freeman,* 1:14CR322 (EDVA 2015) (Cacheris, J.) (Dkt. #73) (rejecting an Eighth Amendment proportionality challenge to a five-year mandatory minimum sentence for receipt of child pornography); *United States v. Wenger*,

---

Child Exploitation, Prevention, and Interdiction, U.S. Department of Justice, Office of the Deputy Attorney General, *Letter to U.S.S.C.* (March 2013), available at http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf.

[5] There are two ways to challenge a sentence's proportionality:  (1) by asserting an as-applied challenge that the length of a term-of-years sentence is disproportionate "given all the circumstances in a *particular case*;" and (2) by asserting a categorical challenge that "an *entire class* of sentences is disproportionate based on the 'nature of the offense' or 'the characteristics of the offender.[5]'"  *United States v. Cobler,* 748 F.3d 570, 575 (4th Cir. 2014) (citing *Graham v. Florida,* 560 U.S. 48, 59 (2010) (emphasis added)).

10

No. 3:11CR457, 2013 WL 6633964 at *4 (N.D. Ohio 2013) (applying *Reingold,* rejecting an Eighth Amendment proportionality challenge to a five-year mandatory minimum sentence for receipt of child pornography).

In regard to Defendant's as-applied challenge, "the Eighth Amendment 'contains a narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Graham v. Florida,* 560 U.S. 48, 60 (2010) (quoting *Harmelin v. Michigan,* 501 U.S. 957, 997, 1000-01 (1991)) (KENNEDY, J., concurring in part and concurring in judgment) (inner quotations omitted). In reviewing an as-applied challenge, the Court "first must determine that a 'threshold comparison' of the gravity of the offense and the severity of the sentence 'leads to an inference of gross disproportionality. . .' In the '*rare case*' that a reviewing court concludes that such an inference may be drawn, the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions . . . If this extended analysis validates the threshold determination that the sentence is grossly disproportionate, the sentence is deemed 'cruel and unusual' punishment under the Eighth Amendment." *Cobler,* 748 F.3d at 575 (quoting *Graham*, 560 U.S. at 59-60) (quoting *Harmelin,* 501 U.S. at 997, 1000-01) (emphasis added). If a threshold inference is not found, "extended comparative analysis of a sentence is unnecessary to justify its constitutionality." *Cobler,* 748 F.3d at 579.

Supreme Court precedents on the application of Eighth Amendment proportionality to a term-of-years sentence have not been clear or consistent. *Compare Rummel v. Estelle,* 445 U.S. 263 (1980) and *Hutto v. Davis*, 454 U.S. 370 (1982) *with Solem v. Helm*, 463 U.S. 277 (1983)

and *Harmelin,* 501 US. 957.  But it is evident that a sentence within a legislatively prescribed term-of-years will *rarely* be deemed "grossly disproportionate."  *See Cobler*,748 F.3d at 578 (as-applied proportionality challenges to non-capital sentences *rarely* prevail due to "the substantial deference" owed to Congress and trial courts) (citing *Solem,* 463 U.S. at 289-90 and *Hutto,* 454 U.S. at 374 ("noting that for felony crimes, because there is 'no clear way to make any constitutional distinction between one term-of-years and a shorter or longer term-of-years,' the 'length of the sentence actually imposed is purely a matter of legislative prerogative' and 'successful challenges to the proportionality of particular sentences should be exceedingly rare'")).  Indeed, as noted by the Fourth Circuit, only once has the Supreme Court found that a term-of-years sentence was grossly disproportionate. *Cobler*, 748 F.3d at 575-76 (discussing *Solem,* 463 U.S. at 296-97).

For the reasons stated above, Defendant committed a crime that Congress, the Supreme Court, and the Fourth Circuit, have all recognized as a very serious offense, not a victimless, passive, or minor felony. *See supra* at 6-8*, Cobler,* 748 F.3d at 580 (quoting *Ferber,* 458 U.S. at 747); *see also* S. Rep. No. 95-438 (1977), 1977 WL 9660; Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102, 122 Stat. 4001 (2008) (stating that the growth of child pornography has been facilitated by the growth of the Internet, and that it "is a permanent record of a child's abuse and the distribution of child pornography images re-victimizes the child each time the image is viewed"); and H.R. Rep. No. 557, H.R. REP. 105-557, 11-12, 1998 U.S.C.C.A.N. 678, 680-81 (1998), 1998 WL 285821.

When Congress enacted the graduated sentencing scheme for child pornography offenses, it made a rational penological judgment to fix a fifteen-year mandatory minimum

sentence for the production of child pornography.  H.R. CONF. REP. 108-66, P.L. 108-21, PROTECT ACT, §103.  The legislative policy judgment that protecting children from sexual exploitation requires incapacitating offenders throughout the distribution chain is entitled to deference.  *See Ewing v. California,* 538 U.S. 11, 29-30 (2003).  Further, no objective factors exist for the Court to decide to impose any other term-of-years sentence here.  *See Harmelin,* 501 U.S. at 1001 ("It is clear that a 25-year sentence generally is more severe than a 15-year sentence but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not.") (citing *Solem,* 463 U.S. at 294).  The Eighth Amendment does not authorize the Court to "sit as a 'super legislature' to second-guess [ ] policy choices.  It is enough that [Congress] has a reasonable basis for believing" that the mandatory minimum sentences "advance[] the goals of [its] criminal justice system in any substantial way." *Ewing,* 538 U.S. at 28 (inner citations and quotations omitted).

   Defendant's Eighth Amendment challenge should fail.  Given the United States' interest in protecting children from sexual exploitation, and its effort to both deter its production and prevent repeated victimization through the circulation of abusive images, a fifteen-year minimum mandatory sentence is not an "extreme" sentence that raises a threshold inference of gross disproportionality.  Accordingly, numerous courts, including the Fourth Circuit, have upheld the constitutionality of sentences for child pornography offenses against Eighth Amendment challenges.  *See Cobler,* 748 F.3d 570 (4th Cir) (120-year sentence for production, transportation, and possession of child pornography not grossly disproportionate); *Reingold*, 731 F.3d 204 (2nd Cir) (five-year minimum mandatory sentence for distribution of child pornography not grossly disproportionate); *Polk,* 546 F.3d 74 (1st Cir) (15-year mandatory minimum sentence

13

for attempting to produce child pornography not grossly disproportionate); *United States v. Weis*, 487 F.3d 1148, 1154 (8th Cir. 2007) (15-year mandatory minimum for a defendant convicted of receiving child pornography who had a prior qualifying conviction did not violate the Eighth Amendment); *United States v. Meiners*, 485 F.3d 1211 (9th Cir. 2007) (per curiam) (15-year mandatory minimum sentence for advertising child pornography did not amount to cruel and unusual punishment in violation of the Eighth Amendment); *United States v. McEwan*, 445 F.3d 237 (3d Cir. 2006) (15-year mandatory minimum sentence for a repeat offender convicted of receiving child pornography did not violate the Eighth Amendment); *United States v. Gross*, 437 F.3d 691 (7th Cir. 2006) (15-year mandatory minimum sentence for distribution of child pornography by a defendant with qualifying prior convictions not grossly disproportional); *Freeman,* 1:14CR322 (EDVA 2015) (Cacheris, J.) (Dkt. #73) (five-year mandatory minimum sentence for receipt of child pornography not grossly disproportionate); *Wenger,* No. 3:11CR457, 2013 WL 6633964 (N.D. Ohio 2013) (five-year minimum mandatory sentence for receipt of child pornography not grossly disproportionate) (citing *United States v. Ball*, 503 F.App'x 505, 2013 WL 3779907, *1 (6th Cir.) (unpublished) (five-year minimum for receiving child pornography was not grossly disproportionate) and *United States v. Jamerson,* 2013 WL 5015502, *5 (6th Cir.) (unpublished)); *United States v. Soule*, 250 Fed. Appx. 834 (10th Cir. 2007) (unpublished) (sentence above the mandatory statutory minimum of 120 months for second conviction for possession of child pornography did not violate the Eighth Amendment); *United States v. Green*, 259 Fed. Appx. 171 (11th Cir. 2007) (per curiam) (unpublished) (97-month sentence for possession and receipt of child pornography does not violate the Eighth Amendment); *United States v. Wilder*, 2006 WL 572699 (D. Mass. 2006) (unpublished)

(mandatory minimums for second offense receipt and possession of child pornography "are not grossly disproportionate to the serious offenses that they are meant to punish").

## CONCLUSION

The PSR identified no factors warranting a departure from the guideline range. (PSR at ¶111). Therefore, and for the foregoing reasons, a sentence at the low end of the guideline range and 15 years of supervised release, is appropriate in this case.

Respectfully submitted,

DANA J. BOENTE
Acting United States Attorney


By:      /s/
         Tracy Doherty-McCormick
         Assistant United States Attorney
         Attorney for the United States of America
         United States Attorney's Office
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         Phone: 703-299-3753
         Fax: 703-299-3981
         Email Address: tracy.d.mccormick@usdoj.gov

15

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of April 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF), and a copy has been sent via electronic mail to the following:

G. Alan Dale, Esquire
Law Offices of G. Allen Dale, PLLC
575 7th Street, N.W.
Suite 300 South
Washington, DC 20004
Tel: 202-638-2900
Fax: 202-783-1654
GAllenDale@aol.com

Stuart Alexander Sears
Schertler & Onorato LLP
575 7th Street, N.W.
Suite 300 South
Washington, DC 20004
Tel:  202-628-4199
ssears@schertlerlaw.com

I also hereby certify that I have sent the foregoing through electronic mail to the following individual:

Jennifer D. Lyerly
U.S. Probation Officer
Blue Ridge Office Center
10500 Battleview Parkway, Suite 100
Manassas, Virginia
Jennifer_Lyerly@vaep.uscourts.gov

                /s/
Tracy Doherty-McCormick
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:  703-299-3753
Fax: 703-299-3981
Email Address: tracy.d.mccormick@usdoj.gov