```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA
                       Alexandria Division

UNITED STATES OF AMERICA,             )
                                      )
                          Plaintiff,  )
v.                                    ) CRIMINAL ACTION
                                      )
PATRICK JOSEPH FRIEDEL,               ) 1:14-cr-383
                                      )
                          Defendant.  )
_____)
```

                    REPORTER'S TRANSCRIPT

                     SENTENCING HEARING

                   Friday, April 24, 2015

                           ---

BEFORE:      THE HONORABLE T.S. ELLIS, III
             Presiding

APPEARANCES: TRACY MCCORMICK, AUSA
             United States Attorney's Office
             2100 Jamieson Ave.
             Alexandria, VA 22314

                 For the Government

             STUART A. SEARS, ESQ.
             Schertler & Onorato LLP
             575 7th Street NW, Suite 300 South
             Washington, DC 20004

             G. ALLEN DALE, ESQ.
             575 7th Street, Suite 300
             Washington, DC 20004

                 For the Defendant

                           ---

             MICHAEL A. RODRIQUEZ, RPR/CM/RMR
                  Official Court Reporter
             USDC, Eastern District of Virginia
                   Alexandria, Virginia

1                                INDEX

2

3    OBJECTIONS/CORRECTIONS TO PRESENTENCE REPORT        5

4    ALLOCUTION ON BEHALF OF THE DEFENDANT               6

5    ALLOCUTION BY THE DEFENDANT                        16

6    ALLOCUTION BY THE GOVERNMENT                       24

7    IMPOSITION OF SENTENCE BY THE COURT                39

8
         (Court adjourned)
9

10                            ---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2

3          (Court called to order at 9:12 a.m. in USA v

4   Friedel.)

5          THE CLERK:  United States versus Patrick

6   Joseph Friedel, Criminal Case Number 1:14-cr-383.

7          Counsel please note your appearance for the

8   record.

9          THE COURT:  All right.  Who is here for the

10  government?

11         ATTORNEY MCCORMICK:  Good morning, your

12  Honor.  Tracy McCormick for the United States.

13         THE COURT:  All right.  Good morning,

14  Ms. McCormick.

15         And for the defendant?

16         ATTORNEY DALE:  Good morning, your Honor.

17  Allen Dale and Stuart Sears on behalf of Mr. Friedel.

18         THE COURT:  All right.  Good morning.

19         And good morning to you, Mr. Friedel.

20         Mr. Friedel, how do you pronounce your name?

21         THE DEFENDANT:  Friedel.

22         THE COURT:  Friedel.  All right.  Good

23  morning.

24         This matter is before the Court -- I am

25  standing for the comfort of my back.  This case is

1    before the Court for sentencing, this defendant having

2    pled -- or having been found guilty on the basis of a

3    plea to a two-count criminal information.  He pled

4    guilty to a charge of production of child pornography

5    and a second count of possession of child pornography.

6    He was originally indicted for slightly different

7    charges.

8                    Distilled to its essence -- (pause).

9                    Distilled to its essence, the activity that

10   he pled guilty to and that he's before the Court for

11   sentencing on today is that he communicated with these

12   underage women, 15 and 16 years old, on the Internet,

13   arranged to meet them, had sex with them, filmed it or

14   videoed it; and that's essentially the conduct.

15                   There is no evidence that he sold the video

16   or shared the video.  He did have 500 images, I think,

17   on his computer when it was searched, and these were

18   child pornography images, including images of people who

19   were real, real victims.

20                   All right.  Let me inquire, first of all,

21   from counsel for defendant.  Have you had an adequate

22   opportunity to review the presentence investigation

23   report and to review it with your client?

24                   ATTORNEY DALE:  Yes, your Honor, I have.

25                   THE COURT:  Mr. Friedel, have you had an

1   adequate opportunity to review the presentence report

2   and to review it with your counsel?

3                  THE DEFENDANT:  Yes, your Honor, I have.

4                  THE COURT:  Are you fully satisfied with the

5   advice and counsel he has provided to you in this case?

6                  THE DEFENDANT:  Yes, your Honor, I am.

7                  THE COURT:  You may be seated.

8                  THE DEFENDANT:  (Complied.)

9           OBJECTIONS/CORRECTIONS TO PRESENTENCE REPORT

10                 THE COURT:  All right.  Are there any

11  objections or corrections to the presentence report on

12  behalf of the defendant?

13                 ATTORNEY DALE:  No, your Honor.

14                 THE COURT:  All right.  Thank you.

15                 Let me ask the government, are there any

16  objections or corrections to the presentence report on

17  behalf of the government?

18                 ATTORNEY MCCORMICK:  No, your Honor.

19                 THE COURT:  Accordingly, the Court will

20  adopt the findings and conclusions of the presentence

21  investigation report as the Court's findings and

22  conclusions in this matter and will proceed now to

23  allocution.  Part of the argument I will hear at the

24  bench.

25                 Now, let me hear first -- I will allow the

1    defendant to allocute if he wishes, or I will have

2    counsel go first, whichever you prefer.

3              ATTORNEY DALE:  I would prefer to go first,

4    your Honor.

5              THE COURT:  You may do so.

6              And I have read your brief, your position.

7         ALLOCUTION ON BEHALF OF THE DEFENDANT

8              ATTORNEY DALE:  Thank you, your Honor.  I am

9    not going to repeat what's in the brief.

10             If I might, just before I begin, introduce

11   the family, not by name, but to let you that Mr.

12   Friedel's family are here.  They asked that I let you

13   know that his mom is here, his dad, numerous family

14   members, his girlfriend.  And aside from his girlfriend,

15   everyone who is here today has traveled a long distance

16   to appear to support him and to appear before your

17   Honor.

18             Your Honor, when the Court boiled this case

19   down to its essence, you were correct, I would say

20   99 percent correct.  I would only make one correction to

21   that, and that is that there was sexual contact with

22   only one of these minors.  That was Minor A.  The rest,

23   he never met.  It was all over the Internet, just

24   exchanging pictures back and forth.

25             THE COURT:  All right.  That's an important

1    correction to make.

2            ATTORNEY DALE:  The second part, not really

3    a correction but just to elaborate, is on the number of

4    photographs of child pornography that were found in his

5    computer.

6            It's one of the things that I will discuss

7    in my allocution, but at the beginning I want to first

8    point out that these pictures that were found in the

9    computer were not pictures that he searched off the

10   Internet.  He did not log in to places to find the

11   pictures, download them and store them and share them

12   with anyone.

13           These pictures, believe it or not, were sent

14   to him from these minors.  And I will discuss that a

15   little bit more in my allocution, if I might.

16           THE COURT:  Well, this is the time to do it.

17   Let's get on with it.

18           ATTORNEY DALE:  Your Honor, this case is,

19   for me, very difficult.  I have not had a case like

20   this.  I have been practicing 38 years, and I just can't

21   remember one that I can boil down to a case like

22   Mr. Friedel's.

23           All hyperbole aside, this is really a very

24   rare case for me.

25           In trying to prepare the allocution, I was

```
 1   reading through --
 2              THE COURT:  I appreciate that.  It isn't
 3   really a significant factor in my decision on
 4   sentencing; that is, your experience over 38 years.
 5              ATTORNEY DALE:  I understand that.
 6              THE COURT:  It won't surprise you to learn
 7   that I have been on the planet longer than you have.
 8              ATTORNEY DALE:  I --
 9              THE COURT:  The point is, I understand, I
10   have read all the briefs.  Your personal view is not
11   something I factor into this.
12              ATTORNEY DALE:  I understand that, your
13   Honor.
14              THE COURT:  All right.  Go ahead.
15              ATTORNEY DALE:  Your Honor, I would submit
16   that this really is not a case to discuss in my
17   allocution the law.  The Court knows the law far better
18   than I'll ever know it.
19              This really is a fact-driven case.  And the
20   fact --
21              THE COURT:  "This is really a fact-driven"?
22   All right.
23              ATTORNEY DALE:  A fact-driven case.
24              THE COURT:  All right.
25              ATTORNEY DALE:  The facts here are, just as
```

1    the Court boiled it down to its essence, there was a

2    production charge with a mandatory minimum of 15 years,

3    for --

4                THE COURT:  Yes.

5                ATTORNEY DALE:  -- for a man whose only

6    production is of himself and this one minor --

7                THE COURT:  Yes.  The important point that

8    you are emphasizing is that he didn't share these

9    videos, he didn't sell them, he didn't do it for

10   commercial reason.  He did it for his own gratification.

11               ATTORNEY DALE:  Precisely.

12               THE COURT:  Yes.  I understood all that.

13   And that's, as you would argue, an important point.

14               ATTORNEY DALE:  It's not only, I would

15   submit, an important point, your Honor, but it goes to

16   his mental state.  It goes to whether or not is he a

17   danger to the community.  It goes to what the sentence

18   that this Court should impose that's sufficient but not

19   greater than necessary to punish him for what he

20   actually did, to deter him and to deter others, and to

21   protect the community.

22               And I think the Court can see from

23   Dr. Berlin's report, he is not a danger, he is not a

24   pedophile.  I believe the government would even admit

25   that.  This man, with a sex addiction, was engaged with

1   thousands of women on the Internet.  He sat through the

2   night with this chat that goes back and forth.

3         When one looks at the government's pleading

4   and the facts that we submitted to, the government's

5   pleading, when they lay out the facts that they base

6   their argument that 22 years of incarceration -- or

7   262 months -- is the appropriate sentence, they talk

8   about all these pornographic pictures that have been put

9   out forever, that are going to be in the public domain,

10   that are going to harm those children forever.

11         That's not what Patrick Friedel did.

12   Patrick Friedel had these in his computer.  They came

13   from the girls themselves.  In fact, I listened to one

14   tape.  It's a very disturbing interview with the agents

15   and one of the minors, and that minor admits to having

16   sent a picture of a four-year-old.

17         If -- the Court said it was going to discuss

18   some of the matters at the bench.  If you could like,

19   that's probably one of the appropriate matters to

20   discuss at the bench.

21         But the fact is, these women -- in fact, the

22   one with whom he had sex, was 15 when he first engaged

23   with her, about to turn 16.  If this had been charged in

24   the State Court as it was originally --

25         THE COURT:  That, too, is irrelevant.

1            ATTORNEY DALE:  Well --

2            THE COURT:  It doesn't matter what would

3    happen in the State Court.

4            ATTORNEY DALE:  I understand that, your

5    Honor.  But if I might, I would submit that it goes to

6    how Draconian these guidelines are --

7            THE COURT:  No --

8            ATTORNEY DALE:  -- when compared to --

9            THE COURT:  -- it doesn't.  It's a different

10   judgment.  One might just as well say that the state

11   system demonstrates how cavalier they are about serious

12   crimes.  The state judgment is not what I deal with.

13           ATTORNEY DALE:  Your Honor --

14           THE COURT:  That isn't to say, by the way,

15   that I'm not conscious of it, that I am not aware of it.

16   The same is true in the drug area.  The same is true in

17   other areas.  It goes the other way in bank robberies,

18   interestingly.

19           Also, the state system has parole.  The

20   state system has other things that the federal system

21   does not have.

22           None of that really -- I am not persuaded

23   the state judgment is the right judgment.  That judgment

24   doesn't prevail here.  I deal with Congress's judgment,

25   the Sentencing Commission's judgment, and in the final

1    analysis it's my judgment that you now have an

2    opportunity to influence by focusing on the 3553(a)

3    factors.

4              ATTORNEY DALE:  Then focusing on those, your

5    Honor, the government concedes in their position papers

6    that the background of this individual, Mr. Friedel,

7    would weigh in his favor.

8              He has no record.  He self-surrendered when

9    he found out there was a warrant out on him.  He has

10   family support.  He pled guilty early on to save the

11   government the time and resources, to save the minors

12   from having to testify.

13             He has the support group when he gets out.

14   He has already started with his -- and he started before

15   he was incarcerated with Pine Grove in addressing his

16   addiction, and wants to continue to address that

17   addiction, and will continue to address that addiction.

18             As far as whether the public needs to be

19   protected from him, we have submitted Dr. Berlin's

20   report, and I would submit that the whole record in this

21   case would indicate that this individual sitting right

22   here today is not someone from whom the public needs

23   protection.

24             That's, I think, borne out with the evidence

25   that he was engaging with a number of an adult women,

1    and out of thousands of people, five, he ends up four

2    chatting with, one having sex with, were under the age

3    of 18.

4            THE COURT:  Well, that person was a member

5    of the public; is that right?

6            ATTORNEY DALE:  She was, your Honor.

7            THE COURT:  And she was -- I think your

8    point, more accurately and modestly stated, is that, of

9    course he was a danger to the public.  These young women

10   were members of the public.

11           But your point is that his sexual addiction

12   was more broadly based than that.  He had relations, I

13   guess, with adults as well as juveniles.

14           And if he were distributing child

15   pornography, if he were engaging in broader, broader

16   efforts at engaging in sex with minors, there would be a

17   greater danger to the public.  And I think what you are

18   arguing is that it's -- the facts before this Court is

19   it's fairly narrowly circumscribed.  Is that right?

20           ATTORNEY DALE:  That is correct, your Honor.

21   And I appreciate the fact is --

22           THE COURT:  But they are not -- you can't

23   argue that the people, the victims -- I don't know, are

24   there any victim statements?

25           ATTORNEY MCCORMICK:  No, your Honor.  We did

1 not receive any, from the government.

2     THE COURT:  Yes.  And neither did the

3 Probation Office.

4     But these victims, and they are underage

5 women, are members of the public.

6     ATTORNEY DALE:  Our position, your Honor, is

7 that 262 months, the low end of the Guidelines, is far

8 greater than necessary to meet --

9     THE COURT:  I understand that.  I understand

10 that.

11     ATTORNEY DALE:  When we raised the Eighth

12 Amendment issue, even the cases that the government

13 cites in their papers regarding the Eighth Amendment

14 issue, in each of those 15-year mandatory minimum cases,

15 with the exception of Cobbler, where there was an Eighth

16 Amendment challenge to 120 years, where there the

17 production was in connection with the molestation of a

18 four-year-old boy, the remainder of those 15-year

19 sentences where the Guidelines far exceeded 15 years,

20 the courts imposed a sentence of 15 years, save the

21 First Circuit Polk opinion, where the defendant received

22 15 years and 8 months.

23     So we would submit that the government's own

24 cases that they cite would suppose at least this Court

25 going down to the 15-year mandatory minimum.

1          THE COURT:  But there are no cases that say

2    15 years is cruel and unusual punishment.  Nor would --

3    nor would I follow any such case, because it would be

4    wrong.

5          ATTORNEY DALE:  In that case, I won't argue

6    that, your Honor, and I will ask the Court to impose the

7    15-year mandatory minimum.

8          THE COURT:  All right.

9          Mr. Friedel, this is now your opportunity,

10   sir, to address the Court and to say anything at all you

11   wish to the Court by way of extenuation, mitigation or,

12   indeed, anything you think the Court should know before

13   sentence is imposed.

14         Now, you don't -- you are not required to

15   say anything if you don't wish to, but you do have the

16   opportunity to do so if you wish to.

17         Do you wish to say anything?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  All right, sir.  I will hear you

20   now.

21         THE DEFENDANT:  I wrote down my statement so

22   I wouldn't forget anything, if that --

23         THE COURT:  That's quite all right.  You can

24   read it or speak it as you wish.

25

```
 1                    ALLOCUTION BY THE DEFENDANT

 2              THE DEFENDANT:  My lawyers told me that your

 3    Honor is the type of individual who reads all of the

 4    material submitted in the case, and I want to say thank

 5    you for that.  We presented a number of pages for your

 6    correction, and it gave me a lot of solace to know that

 7    you reviewed them all, and I want to thank you.

 8              For my whole life I've tried to lead a life

 9    set by my mother's example.  I strived to get an

10    education, serve others, work hard, and maintain

11    humility and integrity.

12              My dream growing up was to work for the

13    public and promote social justice, in particular for the

14    U.S. Government.  Like my grandparents, I wanted to

15    serve my country, something I will never be able to do

16    again as a felon.

17              To the casual observer, and even many of my

18    close friends, I was achieving these goals and doing

19    well.  But privately I was depressed and lonely, and I

20    developed a coping mechanism that disgusted me.  It ran

21    so counter to my value system that it ultimately only

22    furthered my depression.

23              THE COURT:  Why did you do it?

24              THE DEFENDANT:  I asked myself that all the

25    time.
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1       THE COURT:  Well, you need to find an

2   answer.  And the answer is not in a word like

3   "addiction," which covers, covers up the real situation.

4   Addiction is a choice.

5       I tell all defendants, Mr. Friedel, that

6   life is making choices and living with the consequences

7   of the choices you make.  You don't determine where you

8   are born, you don't determine to whom you are born, and

9   you don't determine whether you are born with handicaps

10  or talents.  But you do determine how you respond to all

11  of that.

12      THE DEFENDANT:  Okay.

13      THE COURT:  Now an addiction means a very

14  strong desire to do something, to consume something or

15  to engage in an activity.  But at the end it's a choice,

16  isn't it, Mr. Friedel?

17      THE DEFENDANT:  Correct.

18      THE COURT:  Do you have the power over your

19  own life?

20      THE DEFENDANT:  Yes, your Honor, I do.

21      THE COURT:  Absolutely, you do.

22      You have the choice to do what you did or

23  what you shouldn't have done.  That was a choice.  You

24  do have the power over your own life.  This life is

25  making choices and living with the consequence applies

1    to everybody in the courtroom, me and everybody else.

2                 You have the power over your own life.  You

3    have to decide what kind of person you want to be, and

4    stick to that, be firm about that; otherwise you will be

5    seduced by the moment.  You would fall prey to a

6    moment's desire.  And you can't do that.  Do you

7    understand that?

8                 THE DEFENDANT:  Yes, your Honor, I do.

9                 THE COURT:  So when I asked you why did you

10   do it, you need to have an answer for that, that you

11   think is right.  The answer doesn't reside in some

12   psychologist, psychiatrist or medical doctor's answer to

13   you.  It resides in you.

14                 Go ahead, sir.

15                 THE DEFENDANT:  Why did I, why did I do it?

16   Well --

17                 THE COURT:  You did it because you wanted to

18   do it.  You wanted very, very strongly to do it.

19                 Well, you are going to have to decide that

20   you are not going to do it, that you are going to resist

21   the desire.  Everybody has desires, some stronger than

22   others.  But in the end it's a choice.  It's a choice

23   about what kind of power you want to have over the life

24   that you lead.

25                 Go ahead, sir.  Finish your statement.

1          THE DEFENDANT:  Okay, sir.

2          Since about the age of 18, I privately

3   engaged in typing explicit online --

4          THE COURT:  I'm sorry, "about the age of

5   18," say that again, sir.

6          THE DEFENDANT:  Since about the age of 18, I

7   privately engaged in typing explicit online

8   conversations with countless women, oftentimes

9   exchanging pictures and videos with them.  Some nights I

10  juggled 50 conversations at once.  The things we would

11  type to one another were obscene, deplorable, and many

12  times just plain absurd.

13         The typed conversations would involve women

14  I met from adult websites and cell phone applications.

15  They were located all over the country, and many even

16  from other countries.  At times it seemed to be some

17  kind of competition for who could say the most

18  outrageous things.

19         In my sobriety now and looking back, I am

20  ashamed and humiliated and repulsed by the things that

21  we typed.  I can only imagine how they must read to you,

22  your Honor.

23         So those of us participating in this

24  behavior, it was all painfully normal and routine.  It

25  was an alternate reality that we created to occupy

1    ourselves at all hours of the night.  These were things

2    I am ashamed of, and never thought would see the light

3    of day, and certainly never intended or imagined to

4    become reality.

5         At some point before reaching the age of 21,

6    I began to meet women from online for casual and

7    anonymous sex, sometimes multiple women in a single

8    night.  For someone like me, who found all sexual

9    activity shameful, the guilt from these encounters only

10   deepened my despair.

11        When I first began this behavior around the

12   age of 18, I thought the only person I was hurting was

13   myself.  And then my actions began to hurt my now

14   ex-girlfriend.  And then I began to realize that my

15   actions were enabling and hurting my acting out

16   partners.

17        And then I began to hurt my family and

18   friends by isolating myself and neglecting those

19   relationships.  And some of that family and my best

20   friends are here now.

21        For years I tried to stop this cycle of

22   behavior.  I wrote to you in my letter a number of

23   things that I tried.  And in some ways I am thankful for

24   the search warrant, because it allowed me to come out of

25   the shadows and get a higher of treatment that I needed.

```
 1                   But never, never in a million years did I
 2      think --
 3                   THE COURT:  Let me underscore a point here
 4      for you.
 5                   THE DEFENDANT:  Yes, sir.
 6                   THE COURT:  You just said the level of
 7      treatment that I needed.
 8                   THE DEFENDANT:  Yes, sir.
 9                   THE COURT:  There is no doubt that
10      counseling and treatment can help you.
11                   THE DEFENDANT:  Yes, sir.
12                   THE COURT:  But I don't want you ever to
13      lose sight of the fact that it's your choice.  Even if
14      you didn't receive a millisecond of counseling or
15      treatment, you still have the power to change your
16      behavior and to be the kind of person you decide you
17      want to be.
18                   Do you understand that?
19                   THE DEFENDANT:  Yes, your Honor.
20                   THE COURT:  So, if you don't get any
21      treatment, if you don't get any counseling, don't blame
22      it on that, because you still have that power.
23                   Do you understand that?
24                   THE DEFENDANT:  Yes, your Honor, I do.
25                   THE COURT:  All right.  Go ahead, sir.
```

1            THE DEFENDANT:  But never in a million years

2    did I think my actions would ever lead to hurting a

3    minor.  But that's what happened, and my shame, guilt

4    and sadness for this is really overwhelming.

5            One of the primary functions at the bureau I

6    used to work at, the Department of Labor, was to end

7    child exploitation worldwide, and here I am accused of,

8    and guilty of, of doing just that.

9            All of my behaviors and -- all of my

10   behaviors were shameful, but in involving these five

11   minors I crossed an entirely different line.  It is now

12   difficult to look myself in the mirror.  How can I ever

13   earn forgiveness or even forgive myself?

14           The 8th and 9th steps of the 12-step program

15   are about making amends, but because of the nature of

16   what I have done, it's unhealthy to make direct amends,

17   so the treatment staff at Pine Grove recommended a

18   living amends, that living a sober and healthy life

19   every day and helping others with this problem can serve

20   as a meaningful penance.  So that is what I am doing

21   today.

22           Despite the challenging environment in jail,

23   today I am 214 days without acting out, and counting,

24   and I am looking forward to the day when I am able and

25   strong enough in my sobriety to help and sponsor others.

1    I know my experience can help others with same problem.

2            THE COURT:  What do you mean by "sobriety"?

3            THE DEFENDANT:  "Sobriety" means not acting

4    out; so no masturbating, no pre-occupational thoughts,

5    no fantasies; using the tools that I learned in

6    treatment to help stop that.

7            THE COURT:  All right.  Go on.

8            THE DEFENDANT:  Your Honor, I'm sorry for

9    my -- I'm sorry for my actions.  I apologize to the

10   victims and their families for the harm that I have

11   caused.  No one is more disgusted with me than I am.

12           I apologize to my family, friends and

13   colleagues for letting you all down and disappointing

14   you.

15           I profoundly regret that I came to this

16   point in my life, and I neglected all of you and my

17   guiding moral compass.

18           Your Honor, I beg for leniency so that I may

19   continue to live.  I beg for leniency so that I can

20   continue my journey of sobriety and contribute to

21   society.

22           I beg for leniency so that I am given the

23   opportunity to be a faithful and loving husband to

24   Christie, who supported me, inspired me, loved me and

25   sees the decency in me throughout this legal process and

1    my recovery.

2              I beg for leniency, too, so that I can be

3    released before my mother dies, so that I can make up

4    for all of the years that my action has taken away from

5    our relationship.

6              Thank you for your consideration, and I will

7    accept and respect whatever your judgment.

8              THE COURT:  All right.  You may be seated.

9              THE DEFENDANT:  (Complied.)

10             THE COURT:  All right.  I will hear from the

11   government now.

12                   ALLOCUTION BY THE GOVERNMENT

13             ATTORNEY MCCORMICK:  Good morning, your

14   Honor.

15             Of all the child pornography offenses,

16   production --

17             THE COURT:  I'm sorry.  Speak up, if you

18   would, please.

19             ATTORNEY MCCORMICK:  I'm short.  I

20   apologize.

21             Of all the child pornography offenses,

22   production is the most serious.  And that's what this

23   case is about.  It's about someone who harmed many

24   children, and took images of one of those children.  And

25   it's the psychological harm that -- and the physical

1    harm to these children, that the very serious sentences

2    these offenses have are to prevent that.

3              One minor point here, your Honor, is

4    although the defendant wasn't charged with distribution,

5    the statement of facts does recognize that he used an

6    image of a minor to get other minors to do what he

7    wanted to do.

8              THE COURT:  Tell me about that.

9              ATTORNEY MCCORMICK:  Specifically in the

10   statement of facts, the defendant said that he sent

11   Minor E -- he asked Minor E to play with herself on

12   video.  And she didn't know what that meant, so he sent

13   her a video of another girl doing that.  And that girl

14   appeared to be the same age as Minor E.

15             So in that regard, we -- we dispute the

16   assertion that the defendant never attempted to

17   physically approach a disinterested female and impose

18   unwarranted sex acts on her.

19             As the statement of facts make clear, to the

20   plea agreement, in fact the defendant used anything at

21   his disposal to get the girls to do what he wanted to

22   them to do, including persuasion, including coercion and

23   including threat.

24             THE COURT:  What do you say "coercion"?

25             ATTORNEY MCCORMICK:  Coercion, because when

1    he -- some of the minor rejected what the defendant

2    wanted them to do, he threatened to tell their parents

3    or post the images online, so that they would, in fact,

4    abide by his desires for his own sexual gratification,

5    to get them to do his will.

6              And so in this regard the case is very

7    serious, and that's why it is in Federal Court, because

8    these girls were older.  They weren't six or four, as

9    the defendant points out, but there was still harm here.

10   And so that's why this case is a very serious offense

11   and that's why it's in Federal Court, facing very

12   serious charges and a very serious penalty.

13             Your Honor, I think the government's brief

14   discussed why the Guidelines were empirically based, and

15   I'm not sure we need to go into that here.

16             THE COURT:  Well, in your brief you cited a

17   brief in another case.

18             ATTORNEY MCCORMICK:  Yes.

19             THE COURT:  In the future, I would be

20   grateful if you don't do that.

21             ATTORNEY MCCORMICK:  Yes, your Honor.

22             THE COURT:  Don't send me to look for

23   another brief.

24             ATTORNEY MCCORMICK:  Yes, your Honor.

25             THE COURT:  Distill or summarize the

1    argument in what I am reading there.

2                ATTORNEY MCCORMICK:  Yes, your Honor.

3                THE COURT:  Because oftentimes I am reading

4    briefs at night, at home, and it's a little off-putting

5    to be told that I have to go to something I didn't bring

6    home with me.

7                ATTORNEY MCCORMICK:  I apologize for that,

8    your Honor.

9                THE COURT:  So distill it will now for me.

10               ATTORNEY MCCORMICK:  Yes.

11               In 2009, the Sentencing Commission put out a

12   report on the child pornography guidelines, and they

13   basically described how over the course of 30 years,

14   that the Guidelines had been revised nine times, and

15   that in so doing they were not only based on the

16   Commission's -- the Commission's studies, but also based

17   on their input from Congress.

18               And the fact that there is congressional

19   input into the Sentencing Guidelines is, of course, not

20   wrong, because of Article II, Section 8.  It is part of

21   Congress's authority to set the sentences in these

22   cases.

23               And so the Sentencing Commission recently,

24   in 2013, has promoted its latest round of changes to the

25   Guidelines.

1          THE COURT:  All this, though, is by way of

2     responding to the argument made by the defendant that

3     they are not empirically based; isn't that right?

4          ATTORNEY MCCORMICK:  Well, they are

5     responding --

6          THE COURT:  They are not empirically based.

7     But your answer ought to be, very simply, so what?  The

8     Guidelines don't have to be, by statute or anything

9     else, empirically based.

10          It grew out of the fact that in the 1980s,

11     when the Sentencing Commission was established -- some

12     of us were here then -- what happened is that the

13     Sentencing Commission for a great many violations took

14     sentences that were already in the data bank.  They were

15     already historical sentences and they took two standard

16     deviations from the mean for a particular violation, and

17     that established the Guidelines.  So those were

18     empirically based.

19          But many were not, because they didn't have

20     that data.  Child pornography was one of those.  But

21     nothing in the statute says that they have to be

22     empirically based.

23          The fact of the matter is that there are

24     three judgments that go into any sentence.  First is

25     Congress's judgment.  In this case, Congress has made a

1  judgment with respect to the production.  And Congress's

2  judgment is that there should be a mandatory minimum for

3  that violation.  And then it sets a maximum.  That's the

4  congressional judgment.

5          Then there is a Sentencing Commission

6  judgment in which the Sentencing Commission makes a

7  somewhat more refined judgment after considering a

8  variety of factors.  In some cases it's empirically

9  based, bank robberies, that sort of thing, it's

10  empirically based -- although I am not so sure that's

11  still true.

12          And then finally there is the judgment of

13  the individual sentencing judge, who has to make a

14  particularized judgment for a particularized individual

15  based on the particular facts that apply to that

16  individual, guided by the Guidelines -- they are not

17  mandatory; they are advisory -- and guided by the

18  factors in 3553(a).

19          Do I have that right?

20          ATTORNEY MCCORMICK:  Yes, your Honor, you

21  do.

22          THE COURT:  All right.  Now, tell me why you

23  think it ought to be what you think it is.  So far you

24  have told me one thing that you are emphasizing, and

25  that is that the -- he didn't use the videos that he

1  took for commercial purposes, which is usually what

2  underlies the judgments made by Congress and the

3  Sentencing Commission for production, but you point out

4  that he did use them as a coercion device.  Right?

5          ATTORNEY MCCORMICK:  Yes, your Honor.

6          THE COURT:  All right.  Tell me what else

7  you want to tell me.

8          ATTORNEY MCCORMICK:  Well, your Honor, the

9  essence of justice is that similarly situated defendants

10  be treated similarly, and the Guidelines are the only

11  base we have to do that right now.

12          THE COURT:  That's true.  But the key word

13  is "similarly situated."

14          ATTORNEY MCCORMICK:  That's correct.

15          THE COURT:  And also, as you know, the law

16  is quite clear requiring district judges to make

17  particularized judgments, because every case is somewhat

18  different.

19          ATTORNEY MCCORMICK:  That's correct.

20          THE COURT:  But you are absolutely right

21  that the Guidelines are a benchmark and they enable

22  courts to avoid unwarranted disparities.

23          Go on.

24          ATTORNEY MCCORMICK:  Yes.

25          In this case, the guideline range, you get

1      an enhancement for the age of the victims, which is some

2      kind of level of culpability, and it has a

3      proportionality analysis to it.  Because the victims

4      here were in the range of 15, 16 years old, whereas

5      victims in other cases, if they were younger, they would

6      have gotten a much larger enhancement.

7                 The fact is that the enhancement is also

8      based on whether the production involved the sexual act.

9      And in some cases, as your Honor knows, you can have a

10     child pornography production offense and it would just

11     be looking at somebody's lascivious exhibition, which

12     may or may not make somebody as culpable as somebody

13     else.

14                The enhancement is also based on whether

15     there is sadism or masochistic conduct, which was

16     involved in this case.  So in this --

17                THE COURT:  Which is what?  I'm sorry.

18                ATTORNEY MCCORMICK:  The sadistic and

19     masochistic conduct.  One of the victims was tied up,

20     your Honor.

21                THE COURT:  All right.

22                ATTORNEY MCCORMICK:  Now, the only other

23     factor I would argue, that the last enhancement that was

24     received here was the use of a computer, which of

25     course, as the Sentencing Commission has pointed out and

1   the Department of Justice has pointed out, that probably

2   applies in every case nowadays.

3           And that's something that the Sentencing

4   Commission is going to examine, but they are going to

5   examine that in the light of whether that enhancement

6   should be changed for another enhancement, that more --

7   would more closely reflect what a -- a proportionality

8   analysis to determine the relative culpability of

9   defendants.

10          So, your Honor, as far as the defendant's

11  argument that he is not a pedophile, I think the United

12  States, you know, we don't --

13          THE COURT:  It's a matter of definition,

14  isn't it?

15          ATTORNEY MCCORMICK:  Well, I think if you

16  look at the conduct here, your Honor, his primary focus

17  was adults.  He did, however, in this case on four

18  occasions, five occasions, used children.

19          So whether that makes him an opportunist or

20  just a newly-becoming pedophile is a matter for, you

21  know, judgment.  But that doesn't change the harm to the

22  community.  What his motivation was in seeking out these

23  children is less relevant than the harm that he caused

24  to the --

25          THE COURT:  The fundamental argument they

1   are making in that regard is that he is not a danger to

2   the public.

3           ATTORNEY MCCORMICK:  And that's correct.

4           THE COURT:  What is your view about that?

5           ATTORNEY MCCORMICK:  Well, I don't think

6   that's relevant.  Because whether -- like I said, his

7   motivation as to why he target these children matters

8   less than that he did.  Whether it was because he was an

9   opportunist and couldn't resist or because he was a

10  pedophile, I think it -- the harm is the same in either

11  regard.

12          THE COURT:  Do you want to say anything

13  about the Eighth Amendment argument, which is part of

14  what you also left out in your brief?

15          ATTORNEY MCCORMICK:  No, your Honor, I

16  addressed the Eighth Amendment in my brief.

17          THE COURT:  Didn't you refer me to another

18  brief in that regard, too?

19          ATTORNEY MCCORMICK:  No, your Honor.

20          THE COURT:  Oh, that's right.  Only with

21  regard to the guideline attack.

22          ATTORNEY MCCORMICK:  Well, your Honor,

23  actually I did address the guideline attack, primarily

24  because in this case, this case involved 2G 2.1, which

25  is the production guideline.  And the subject of the

1    statement in that article and most of the attacks on the

2    guideline range go to 2G 2.2.

3              So I pointed out in my brief --

4              THE COURT:  Yes, you made that point.

5              ATTORNEY MCCORMICK:  Correct.

6              THE COURT:  But then you referred me to

7    another brief.

8              ATTORNEY MCCORMICK:  Well, your Honor, it

9    was only because that was a side point of a brief that

10   was filed the day before, and I thought it was a

11   collateral issue.  And I --

12             THE COURT:  I see.

13             ATTORNEY MCCORMICK:  -- apologize and I will

14   never do that again.  I understand your point.  I will

15   definitely address it more head-on, even as a collateral

16   not in a footnote, because I understand the

17   inconvenience that caused you.

18             The Eighth Amendment, I did address in the

19   paper.  And the Eighth Amendment, as your Honor pointed

20   out, this case is -- it's an as-applied constitutional

21   challenge, and it should fail, because it doesn't --

22   it's a very rare situation in which -- proportionality

23   review available in the Fourth Circuit under the

24   Cobler case that reaffirmed that longstanding principle

25   in the Fourth Circuit, which was the subject of some

1    confusion over the years.

2              In order to find an unconstitutional term of

3    years sentence -- it's only happened on one occasion and

4    it's very rare.  And the threshold -- you -- first you

5    have to compare a threshold -- make a threshold

6    comparison of the gravity of the offense and the

7    severity of the sentence.

8              And if that leads to an inference of gross

9    disproportionality, then the Court would move on to an

10   extended analysis showing a comparison with sentences

11   for offenses in the same jurisdiction and sentences for

12   offenses in other jurisdictions.

13             And as I stated, this is a very, very rare

14   occurrence, because in a term of life sentence, as the

15   Supreme Court pointed out in Harmelin case, it's very

16   difficult for a judge to decide whether a term of years

17   for 10 years is more appropriate than a term of years

18   for 25 years, or 5 years.

19             There is no objective factors for the Court

20   to consider to make that decision, which is why that is

21   a decision that gets made by Congress, because Congress

22   is the body that's charged with developing sentences in

23   cases, and they do so on the basis of hearings and

24   testimony and consideration in that regard, and they

25   come up with a sentencing scheme.

1          So in this case, there is the threshold

2   comparison of the gravity of the offense to the gravity

3   of the sentence does not lead to any inference of gross

4   disproportionality.

5          The Cobler case found 120 years was not

6   grossly disproportionate in a production case.  The

7   facts in that case were more aggravated, way more

8   aggravated than they are here, but that doesn't make the

9   15-year mandatory minimum sentence grossly

10  proportionate -- disproportionate to the crime.

11          The seriousness of the offense as addressed

12  by Ferber [phonetics] in the Supreme Court, and by --

13  and addressed by Congress in the numerous times they've

14  passed these child pornography offenses and increased

15  the penalty for those offenses is -- it's irrefutable,

16  as recognized by the Fourth Circuit mas well.

17          And Congress, in fact, put together a

18  graduated sentencing scheme, recognizing the different

19  levels of culpability of offenders:  15-year mandatory

20  minimum for production, 5-year mandatory minimum for

21  receive and distribution, and no mandatory minimum for a

22  possession case.

23          THE COURT:  But a 20-year maximum.

24          ATTORNEY MCCORMICK:  There is a 20-year

25  maximum now for possession offenses --

```
 1                    THE COURT:  That's right.
 2                    ATTORNEY MCCORMICK:  -- when it involves a
 3      minor under the age of 12.
 4                    THE COURT:  All right.
 5                    ATTORNEY MCCORMICK:  Yes, that's correct,
 6      your Honor.
 7                    And so because --
 8                    THE COURT:  But he did have images like
 9      that --
10                    ATTORNEY MCCORMICK:  He did.
11                    THE COURT:  -- in the 500.
12                    ATTORNEY MCCORMICK:  He did have images of
13      that.  I don't have those facts in front of me.  I have
14      agents here if you would like to hear testimony more
15      about that.
16                    THE COURT:  Well, let me clear about that.
17      I don't want to be incorrect about that.  But I think he
18      did have images of -- not of his victims, but of
19      children under the age of 16.  He had them at 12 and
20      others.
21                    Am I incorrect about that?
22                    Let --
23                    ATTORNEY MCCORMICK:  Your Honor --
24                    THE COURT:  -- ask the defendant's counsel.
25                    ATTORNEY DALE:  You are not incorrect about
```

1       that, your Honor.  Our only position is those were sent

2       from these minors to him.

3                    THE COURT:  Right.

4                    ATTORNEY DALE:  He did not search them out.

5       But you are correct, they were under -- (pause) --

6                    THE COURT:  All right.

7                    ATTORNEY DALE:  -- 12.

8                    THE COURT:  Thank you.

9                    ATTORNEY MCCORMICK:  So in this case the

10      policy choices of Congress in passing a graduated

11      sentencing scheme in child pornography offenses deserves

12      respect by the judiciary.

13                   And, therefore, given the gravity of the

14      offense, the very serious offense that's at issue here,

15      I don't think it raises -- leads to the inference of

16      gross disproportionality.  And that's been recognized by

17      numerous courts, as cited in the brief.

18                   THE COURT:  All right.  Let me have counsel

19      at the bench to discuss one other matter that should be

20      under seal.

21                   And Mr. Friedel, you can come forward as

22      well.

23                   (Sidebar discussion under seal not

24      transcribed.)

25                   (In open court as follows:)

1          THE COURT:  All right.  I have now heard

2     argument allocution from defendant, defense counsel and

3     the government.  I have adopted the findings and

4     conclusions of the presentence report as the Court's

5     findings and conclusions in this matter.

6          Let me now ask whether there are any victims

7     presented who wish to be heard.

8          (No response.)

9          THE COURT:  All right.  Hearing none, is

10     there any reason why the Court should not now proceed to

11     impose sentence?

12          Let me ask the government.  Any reason why

13     the Court should not now proceed to impose sentence in

14     this case?

15          ATTORNEY MCCORMICK:  No, your Honor.

16          THE COURT:  From the defendant?

17          ATTORNEY DALE:  No, your Honor.

18          THE COURT:  All right.  Mr. Friedel, come to

19     the podium.

20          THE DEFENDANT:  (Complied).

21          IMPOSITION OF SENTENCE BY THE COURT

22          THE COURT:  Mr. Friedel, you stand convicted

23     of the serious crimes of producing child pornography and

24     possession of child pornography, and Congress has

25     prescribed severe penalties for these violations.

1           The law requires that I consider a variety

2   of factors in imposing an appropriate sentence, because

3   imposition of a sentence in each case is a distinct

4   task.  Every defendant is slightly different.  They

5   often lead to the same sentences, but I have to consider

6   the differences.

7           The first factor the Court has to consider

8   is your personal history and characteristics, with which

9   I am familiar from the presentence report, and I have a

10  pretty good sense of your personal life.

11          You are a category 1, which means that this

12  is your first contact with the criminal justice system,

13  either federal or state.  You are college educated.  You

14  have worked for the government.  I am familiar with all

15  of that.

16          The next factor that the Court must consider

17  is the nature and circumstances of the offenses, and I

18  have considered those in some detail.

19          Now what I find particularly significant

20  there is that, with respect to the production of child

21  pornography, that this was not a matter of typical

22  production for economic purposes and the like.  You

23  didn't share these videos with others.  You didn't use

24  peer-to-peer software and that sort of thing, and you

25  did it really for your own gratification.

1          I would consider it more serious if you had,

2    for example, sold these images to anybody, either on the

3    Internet or otherwise.  You didn't.  At least there is

4    no evidence of that.

5          That doesn't mean that you didn't produce

6    child pornography; you did, but it wasn't for commercial

7    purposes.

8          You also, I think, on the possession side, I

9    do find that you did have images of younger children,

10   and some of which it appears you obtained from the some

11   of the people that you communicated with.  But these,

12   too, were not shared or circulated by you.

13         I do take into account the fact that, as I

14   think -- Ms. McCormick, is that --

15         ATTORNEY MCCORMICK:  Yes, your Honor.

16         THE COURT:  -- as Ms. McCormick pointed out,

17   you did use these images to assist you in persuading

18   others to accommodate your wishes, your desires.  That's

19   a factor I have taken into account as well.

20         The law also requires that in addition to

21   your personal history and characteristics and in

22   addition to the nature and circumstances of the offense,

23   that I impose a sentence that promotes respect for the

24   law, that provides just punishment for those offense and

25   that deters you and deters others from committing these

1    kinds of crimes.

2           Now, I am satisfied you don't need to be

3    further deterred.  I think your expression of regret is

4    sincere, and I think, I think there is not a great

5    likelihood that you will recidivate, that you will

6    continue to commit crimes.

7           But I must impose a sentence that also

8    deters others.  The sentence I impose must stand as a

9    beacon, a warning, to others not to engage in this kind

10    of conduct.  And the reason for that, of course, is that

11    this kind of pernicious conduct does real harm to

12    victims.

13           Ms. McCormick again is right to point out

14    that this has been studied a lot, and the harm to

15    victims is incalculable.

16           Now we didn't have any victims here today to

17    express the view, but it would only take a moment's

18    reflection on your part and the part of everyone here to

19    know that adults having sex with children does

20    irreparable harm to children; and 16- and 15-year-olds

21    are children.  Lives are significantly scarred by such

22    conduct.

23           The law also requires that I consider the

24    kinds of sentences available, that I consider the

25    Guidelines.  They are not mandatory, as they once were.

1   They are advisory.  But they are important because they

2   are a benchmark and they allow the Court to ensure that

3   there aren't unwarranted disparities between the

4   sentence I impose on you and the sentence imposed on

5   others convicted of essentially similar conduct.

6              I have considered all of those factors.

7              And then I must also ensure that the

8   sentence I impose is not greater than necessary to

9   accomplish of the goals of sentencing set out in

10  Section 1353(a) of the statute.

11             But as I said earlier, in the end sentencing

12  is it not a mathematical exercise.  It's a judgment.

13  It's a judgment that is made on the basis of the factors

14  that I have stated.

15             It is the judgment of this Court,

16  Mr. Friedel, that you be committed to the custody of the

17  Bureau of Prisons for a period of 192 months.

18             Upon release from confinement you are to

19  serve 10 years of supervised release.

20             You are to pay a $100 special assessment.

21             I believe -- is probation officer present,

22  Ms. Lyerly, in the courtroom?

23             THE PROBATION OFFICER:  Yes, your Honor.

24             THE COURT:  I believe you indicated that the

25  defendant wasn't capable of paying the minimum fine.  Is

1    that correct?

2                THE PROBATION OFFICER:  That is correct.

3                THE COURT:  All right.  I will not impose

4    the minimum fine, then, which in this case was fairly

5    substantial.

6                I will order, as I said, that you pay the

7    $100 special assessment.

8                I will order that your supervised release be

9    subject to a number of special conditions in addition to

10   the standard conditions.

11               First, you must participate in a program

12   approved by the Probation Office for substance abuse.

13   That could include residential treatment.

14               You also must submit to a polygraph test as

15   directed by the probation officer as part of a sex

16   offender therapeutic program.  And those costs, to the

17   extent possible, are to be paid by you as directed by

18   the probation officer.

19               You are also to participate in a program

20   approved by the Probation Office and at the direction

21   and discretion of the probation officer for mental

22   health treatment, to include a psychosexual evaluation.

23   And the costs of the program, if it is feasible, is to

24   be borne by you.

25               You are not to accept any paid or volunteer

1    positions involving children.

2              You are not to have any access to or possess

3    any pornographic material or any pictures displaying

4    nudity.  In other words, you can't have any pornography

5    at home when you are on supervised release.

6              You can't have contact with minors, unless

7    supervised by a knowledgeable adult.  That is, the adult

8    who supervises the contact with minors must know about

9    these convictions.

10             You can't, of course, uses any sex-related

11   adult telephone services, and you can't uses a computer

12   to access pornography or anything of that sort.

13             Of courses, child pornography is a crime.

14   Pornography, adult pornography, is not a crime.  But you

15   are precluded from that as a condition of your

16   supervised release.

17             And of course you may not violate the law.

18   If you were to possess or acquire child pornography

19   while you are on supervised release, that would be not

20   only be a violation of your supervised release and you

21   could be returned to prison for the full term of the

22   supervised release, but you would also have committed

23   another felony and be subject to prosecution for that.

24             And you will be allowed to have a computer,

25   but your computer will be monitored by the Probation

1    Office.  They have a computer monitoring software that

2    will allow the Probation Office to be sure that you are

3    not engaging in any prohibited conduct.

4            Now, have I omitted any condition that you

5    think should be added, Ms. McCormick?

6            ATTORNEY MCCORMICK:  No, your Honor.

7            THE COURT:  Any objection to any of those

8    conditions?

9            ATTORNEY DALE:  No, your Honor.

10           THE COURT:  All right.

11           Have I omitted any aspect of the sentence,

12   Ms. McCormick?

13           ATTORNEY MCCORMICK:  No, your Honor.

14   Because restitution in this case -- I mean, not

15   restitution -- forfeiture in this case can be handled by

16   Fairfax County.

17           THE COURT:  By what?

18           ATTORNEY MCCORMICK:  Fairfax County.

19           THE COURT:  All right.

20           Now, restitution for victims, there are no

21   victim statements that I can address; is that correct?

22           ATTORNEY MCCORMICK:  That is correct.  I

23   misspoke when I said "restitution."  I meant forfeiture.

24           THE COURT:  Yes.

25           ATTORNEY MCCORMICK:  There is no restitution

1    request in this case.

2              THE COURT:  Forfeiture has already occurred;

3    am I correct?

4              ATTORNEY MCCORMICK:  No, your Honor.  There

5    is forfeiture notice in the indictment, but the actual

6    forfeiture of the items has yet to occur.

7              THE COURT:  Well, why isn't that occurring

8    today as part of this sentence?

9              ATTORNEY MCCORMICK:  Your Honor, in this

10   case the office decided that because Fairfax County had

11   custody of the items, the child pornography, that they

12   would handle the forfeiture.

13             THE COURT:  All right.

14             ATTORNEY MCCORMICK:  I had prepared a

15   forfeiture order in this case, but --

16             THE COURT:  I want an order of forfeiture.

17   Where is it?  Where is the order?

18             ATTORNEY MCCORMICK:  Because it was going to

19   be handled by Fairfax County, I don't have it with me.

20   But I will -- I will -- it's a consent forfeiture order

21   that I will work out with Mr. --

22             THE COURT:  All right.  Then submit that to

23   the Court, because I will order forfeiture as part of

24   this sentence.

25             ATTORNEY DALE:  Yes, your Honor.

1          May I have one moment with Ms. McCormick?

2          THE COURT:  Yes, you may.

3          (Counsel conferring.)

4          ATTORNEY DALE:  Your Honor, obviously we

5    will do as the Court directs, but I can tell the Court

6    that the agents gave me a list of the items this morning

7    for us to sign off on for them to simply destroy, and we

8    prepared to do that.

9          THE COURT:  All right.

10          ATTORNEY DALE:  I promised them I would have

11   that to them within the week, and I will, and they can

12   destroy the items.

13          THE COURT:  All right.  Well, you and

14   Ms. McCormick can submit to the Court an order of

15   forfeiture.

16          And what you do with the items that are

17   forfeited is of no interest to the Court, whether they

18   are burned or whatever.  It doesn't matter.  But I do

19   want to enter an order of forfeiture as part of this

20   case.

21          ATTORNEY MCCORMICK:  Yes, your Honor.

22          THE COURT:  All right.

23          Let me ask Ms. Lyerly, have I omitted

24   anything in connection with the sentence?

25          Where is Ms. Lyerly?  There you are.

```
 1                    THE PROBATION OFFICER:  Your Honor, the

 2        special assessment fee should be $200.

 3                    THE COURT:  You are right.  It should be

 4        $200, $100 per count.

 5                    Anything else?

 6                    THE PROBATION OFFICER:  And the term of

 7        supervised release, is that ten years as to each count?

 8                    THE COURT:  Yes.  Let me be clear about

 9        that.

10                    The 192 months is with respect to the

11        production count.  And with respect to the possession

12        count, it's a 10-year sentence to run concurrently with

13        the sentence on the production.  So it's a total

14        sentence of 192 months, broken up as I have indicated.

15                    Anything else, Ms. Lyerly?

16                    THE PROBATION OFFICER:  I believe that's it,

17        your Honor.

18                    THE COURT:  Anything further, Ms. McCormick?

19                    ATTORNEY MCCORMICK:  No, your Honor.

20                    THE COURT:  All right.

21                    Nothing further for the defendant?

22                    ATTORNEY DALE:  No, your Honor.

23                    THE COURT:  Good luck to you, Mr. Friedel.

24                    Remember, life is making choices and living

25        with the consequences.  You make the choices.  You write
```

1    the pages of your own life story.  You have that power.

2    Don't ever forget that.

3              THE DEFENDANT:  Thank you, your Honor.

4              THE COURT:  And you have a lot of life left

5    open to you, a lot of life to make better decisions, and

6    you have ample opportunity to redeem yourself in this

7    matter.

8              You understand what I am saying to you?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  All right.

11             I thank counsel for your cooperation.

12             Call the next matter.

13             (Court recessed in USA v Friedel.)

14

15                        ---

16

17

18

19

20

21

22

23

24

25

```
1

2                          CERTIFICATE

3

4              I, MICHAEL A. RODRIQUEZ, an Official Court

5      Reporter for the United States District Court, in the

6      Eastern District of Virginia, Alexandria Division, do

7      hereby certify that I reported by machine shorthand, in

8      my official capacity, the proceedings had upon the

9      sentencing hearing in the case of UNITED STATES OF

10     AMERICA v. PATRICK JOSEPH FRIEDEL.

11

12             I further certify that I was authorized and

13     did report by stenotype the proceedings in said

14     sentencing hearing, and that the foregoing pages,

15     numbered 1 to 51, inclusive, constitute the official

16     transcript of said proceedings as taken from my machine

17     shorthand notes.

18

19             IN WITNESS WHEREOF, I have hereto subscribed

20     my name this  11th   day of   May           , 2015.

21

22

23                          _____/S/_____
                            Michael A. Rodriquez, RPR/CM/RMR
24                               Official Court Reporter

25
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR